QUINN EMANUEL URQUHART & SULLIVAN, LLP
Michael T. Zeller (Bar No. 196417)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>       vs.<br><br>EXCITE LTD., a Hong Kong business entity, and EXCITE USA, LP, a Texas business entity, and DOES 1 through 10, inclusive,<br><br>             Defendants. | CASE  NO. 2:15-CV-10021<br>_____<br><br>COMPLAINT FOR:<br><br>(1)  COPYRIGHT INFRINGEMENT;<br>(2)  TRADE DRESS INFRINGEMENT;<br>(3)  DILUTION;<br>(4)  STATUTORY AND COMMON LAW UNFAIR COMPETITION;<br>(5)  MISAPPROPRIATION;<br>(6)  UNJUST ENRICHMENT;<br>(7)  PASSING OFF; AND<br>(8)  BREACH OF CONTRACT<br><br>DEMAND FOR JURY TRIAL |

7540235.1

COMPLAINT

Plaintiff, Mattel, Inc. ("Mattel") brings this action against defendants Excite Ltd. and Excite USA, LP (together, "defendants") for injunctive relief and damages and alleges as follows:

Nature of the Action

1.     In this action, Mattel seeks injunctive relief and damages for defendants' misappropriation of Mattel's intellectual property and for defendants' deliberate violations of this Court's Order previously enjoining defendants from such misappropriation.

2.     Mattel is the exclusive owner of all rights to the famous BARBIE line of dolls and other products.  Among Mattel's most valuable BARBIE properties is its "CEO" BARBIE doll head, which has been used on many millions of BARBIE dolls sold to the public and been depicted in or on many millions of licensed BARBIE products sold to the public over the years.  These original, artistic works are protected by copyright and are the subject of numerous, subsisting copyright registrations owned by Mattel.  In addition, because Mattel has invested hundreds of millions of dollars promoting them, the consuming public has come to recognize dolls and other products using and depicting the CEO BARBIE doll head as originating from, authorized by or sponsored by Mattel.  The CEO BARBIE doll head is therefore also the protected trade dress of Mattel.

3.     Furthermore, in 2005, Mattel previously sued defendants in this Court for infringing, diluting and otherwise misappropriating Mattel's intellectual property, including its rights in the CEO BARBIE doll head.  In resolving that action, Mattel and defendants entered into a Confidential Settlement Agreement dated as of October 24, 2005 (the "Agreement").  Pursuant to the Agreement, defendants stipulated to the entry of an injunction restraining defendants from, among other things, further infringement and dilution of Mattel's rights in its CEO BARBIE doll head (the "Injunction").  This Court entered and filed the Injunction on November 3, 2005.

4.     Despite their actual knowledge of Mattel's rights and despite the Agreement and the Injunction prohibiting further misappropriation by defendants, defendants have sold, and are continuing to sell, dolls that use heads which are copies of Mattel's CEO BARBIE doll head.  As a consequence, defendants have engaged in, and threaten in the future to further engage in, copyright infringement, trademark infringement, trade dress infringement, trade dress dilution, unfair competition and passing off, all in violation of the laws of the United States, California and other jurisdictions.  As a further consequence, defendants have breached the Agreement and violated this Court's Injunction.  Defendants' misconduct is and has been willful, performed with the intention of misappropriating Mattel's copyrighted works, of usurping Mattel's hard-earned good will in its products and marks and of deceiving the consuming public.  Defendants' actions have caused irreparable damage to Mattel, and, unless defendants are restrained and enjoined by this Court, Mattel will continue to be irreparably harmed in the future.   Mattel is entitled to further preliminary and permanent injunctions to restrain defendants from further wrongdoing, as well as awards of actual, statutory and punitive damages against defendants and other legal and equitable relief.

<u>Jurisdiction and Venue</u>

5.     This action arises under the copyright laws of the United States, Title 17, United States Code, under the trademark, trade dress and anti-dilution laws of the United States, Title 15, United States Code, and under the statutory and common law of unfair competition, passing off and misappropriation.  The jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331 and 1338, as well as upon principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The jurisdiction of this Court is further founded upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship of the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7540235.1

6.      Venue is proper under 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to the claims herein occurred, and a substantial part of the property that is the subject of this action is situated, in this District.  Among other things, the infringing products which are the subject of this litigation were distributed, offered for distribution, marketed and sold in this District; and defendants undertook their infringing actions knowing that, and with the intention that, they would damage Mattel in this District.  Venue is also proper in this District under 28 U.S.C. §§ 1391(c) and 1400(a) because defendants are subject to personal jurisdiction in the Central District of California.

<u>Parties</u>

7.      Plaintiff Mattel, Inc. is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in El Segundo, California.

8.      Mattel is informed and believes, and on that basis alleges, that defendant Excite Ltd. is a Hong Kong business entity, with its principal place of business in Hong Kong.

9.      Mattel is informed and believes, and on that basis alleges, that defendant Excite USA, LP is a Texas business entity, with its principal place of business in Carrollton, Texas.

10.     The fictitiously named defendants are manufacturers, promoters, distributors, and others who reproduce, display, offer for sale, and sell defendants' products which constitute unauthorized reproductions or derivatives of Mattel's copyright-protected works and trade dress-protected products and which use designations that are confusingly similar to Mattel's protected marks.  The identities of the various Doe Defendants are not currently known, and this Complaint will be further amended to include the names of such individuals or entities, when the same is ascertained.

7540235.1

11.     Mattel is informed and believes, and on that basis alleges, that at all relevant times mentioned in this Complaint, defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other and were acting within the scope and authority of that agency and with the knowledge, consent and approval of each other.

### Mattel's Relevant Intellectual Property Rights

12.     Mattel is a manufacturer and marketer of consumer products, including toys, games, dolls and stuffed toys.  Some of Mattel's most successful product lines include BARBIE, FISHER-PRICE, AMERICAN GIRL, HOT WHEELS and MATCHBOX.

13.     Mattel was founded in 1945 by Elliot and Ruth Handler and Harold "Matt" Mattson.  The name of the company was created by incorporating the names of two of its founders, "MATT-son" and "EL-liot." Originating from the Handlers' garage, the company greatly expanded its operation following World War II and soon began to thrive as its reputation for producing high-quality toys spread.  During the next several decades, Mattel became world-famous for producing high-quality toys at reasonable prices.

14.     The first BARBIE doll was publicly introduced in 1959 by Mattel co-founder Ruth Handler.  Mattel has spent the past five decades building the BARBIE brand into one of the world's most valuable line of products.  It is also Mattel's most important business.  More than one billion BARBIE dolls have been sold since 1959.  The BARBIE line of products regularly has generated hundreds of millions in annual revenues.

15.     Among Mattel's most valuable properties in its BARBIE line are its "CEO" BARBIE doll head.  In 1991, Mattel created a doll head called "Neptune's Daughter."  This head is also sometimes known as the "Mackie" doll head because it was first used in 1992 on a series of BARBIE dolls for which famed fashion designer Bob Mackie created the clothing and accessories.  In 1998, Mattel created a smiling

version of the Neptune's Daughter head.  That head is sometimes known internally at Mattel as the "CEO" BARBIE head and as the "Smiling Mackie" head.

16.   Mattel's CEO BARBIE head has been enormously popular and has been used on many tens of millions of BARBIE dolls with different doll names, outfits and face paint sold to the public since its introduction in 1999.  In fact, Mattel has used the CEO head on hundreds of BARBIE doll products sold with different fashions and accessories, including such best-selling dolls as the "Swan Lake" BARBIE doll.  In addition, Mattel has sold, through its licensees, numerous books, magazines, artwork and other BARBIE products picturing its CEO BARBIE doll head, and invested hundreds of millions of dollars to promote and advertise dolls featuring the CEO BARBIE head.

17.   Mattel has caused the copyrights for certain works of art pertaining to its CEO BARBIE doll head to be registered with the United States Copyright Office (hereinafter, the "CEO BARBIE Copyrighted Works").  The registrations for these works are owned by Mattel, are valid and subsisting, and include, without limitation, VA 945 179, TX 5 113 373, TX 5 318 236 and TX 5 594 469.

18.   In addition, the distinctive and non-functional CEO BARBIE doll head distinguishes Mattel's products, including its dolls, from the products of others.  Their distinctive set of facial features, among other things, separately and together alerts the consuming public to the source of the dolls as Mattel (hereinafter, the "CEO BARBIE Trade Dress").

19.   Because of Mattel's extensive promotional activities involving the CEO BARBIE Trade Dress for years, and as a consequence of Mattel's fair and honorable dealings with its customers, the relevant consuming public has come to recognize products utilizing the CEO BARBIE Trade Dress as high-quality goods connected with, licensed by, or offered by Mattel.  Through extensive advertising, both nationally and worldwide, the CEO BARBIE Trade Dress is, and at all relevant times has been, famous.

<u>Defendants' Unlawful Conduct</u>

20.     Defendants distribute, market and sell various lines of dolls and related products and therefore directly compete with Mattel's BARBIE products.  Without Mattel's permission, defendants have procured the manufacture of, distributed, promoted and sold, and continue to procure the manufacture of, distribute, promote and sell, dolls that unlawfully copy and otherwise exploit Mattel's CEO BARBIE Copyrighted Works and Trade Dress.  Defendants further have prepared, displayed, distributed, marketed and otherwise commercially exploited two-dimensional depictions of their infringing dolls, including without limitation on product packaging.

21.     In addition, defendants' unauthorized uses of Mattel's CEO BARBIE Trade Dress have caused and are likely to cause mistake, deception and confusion in the marketplace as to the origin, association and sponsorship of defendants' goods. Defendants not only market and sell the same types of goods as Mattel, but defendants also market and sell their dolls in the same channels of trade, in the same retail stores and to the same groups of consumers as Mattel's goods.

22.     Mattel has expended a great deal of effort and millions of dollars to promote its BARBIE lines of products, which have fostered the success and wide recognition of Mattel's BARBIE product lines.  Defendants chose to copy Mattel's CEO BARBIE Trade Dress because they seek to trade off the enormous good will that Mattel has earned in its trade dress and to deceive the consuming public as to the origin, sponsorship and affiliation of defendants' products.

23.     None of defendants' goods is subject to Mattel's control or Mattel's manufacturing or other quality standards.  Mattel is informed and believes, and on that basis alleges, that defendants' products fall below the quality and other standards set for authorized reproductions of Mattel's works and products.  Defendants' unauthorized copies dilute and tarnish the distinctive quality of Mattel's famous CEO BARBIE Trade Dress.

7540235.1

24.     As a consequence of defendants' actions, defendants have damaged the reputation, business and good will of Mattel, internationally, nationally, and in this judicial district, and unless enjoined, Mattel is informed and believes that defendants will continue such conduct to the immediate and impending irreparable injury of Mattel.

## FIRST CAUSE OF ACTION

### (Copyright Infringement--17 U.S.C. § 101 et seq.)

25.     Mattel repeats and re-alleges each and every allegation of Paragraphs 1 through 24, above, as though fully set forth at length.

26.     Mattel's CEO BARBIE Copyrighted Works are original works of art and are the subject of valid, and subsisting, copyright registrations owned by Mattel. Defendants have reproduced, displayed, distributed, imported, sold and offered for sale unauthorized reproductions of, and prepared unauthorized derivative works from, Mattel's CEO BARBIE Copyrighted Works.

27.     Defendants' acts violate Mattel's exclusive rights under the Copyright Act, including without limitation Mattel's exclusive rights to reproduce, display, import and distribute its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.  Defendants' use of Mattel's CEO BARBIE Copyrighted Works is and has been made without Mattel's consent and for commercial purposes.  Accordingly, defendants have engaged in direct and contributory infringement of Mattel's copyrighted works.

28.     Defendants' wrongful conduct has been willful, deliberate and without excuse or justification.  Mattel is entitled to recover its actual damages plus defendants' profits, statutory damages, and Mattel's costs of suit and attorneys' fees.

29.     Defendants' actions described above have caused and will continue to cause irreparable damage to Mattel, for which Mattel has no adequate remedy at law. Unless defendants are restrained by this Court from continuing their infringement of

-8-

Mattel's CEO BARBIE Copyrighted Works in violation of 17 U.S.C. §§ 106 and 501, these injuries will continue to occur in the future.

SECOND CAUSE OF ACTION

(Trade Dress Infringement--15 U.S.C. § 1125(a))

30.     Mattel repeats and re-alleges each and every allegation of Paragraphs 1 through 29, above, as though fully set forth at length.

31.     Because of Mattel's extensive promotional activities involving the CEO BARBIE Trade Dress, and as a consequence of Mattel's fair and honorable dealings with its customers, the relevant consuming public has come to recognize products utilizing the CEO BARBIE Trade Dress as high quality goods connected with or offered by Mattel and its licensees.

32.     The similarity between Mattel's CEO BARBIE and defendants' products is likely to cause confusion and to deceive the public, in that purchasers and prospective purchasers of Mattel's products are falsely led to believe that defendants' products and commercial activities originate with, are sponsored by, or are otherwise authorized by Mattel.  Such confusion is even more likely because defendants' infringing goods and channels of trade are identical or virtually identical to the types of goods that Mattel has manufactured and marketed and to the channels of trade that Mattel has used for many years.

33.     Defendants' actions have at all times been without Mattel's consent. Defendants' acts constitute direct and contributory infringement of Mattel's trade dress in violation of § 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

34.     Defendants' acts complained of herein have damaged and will continue to damage Mattel irreparably.  Mattel has no adequate remedy at law for these wrongs and injuries.  The damage to Mattel includes harm to its good will and reputation in the marketplace that money cannot sufficiently compensate.  Mattel is, therefore, entitled to preliminary and permanent injunctions restraining defendants and their agents, servants and employees, and all persons acting thereunder, in concert therewith or on their

behalf, from using Mattel's CEO BARBIE Trade Dress, or any colorable or confusingly similar imitation thereof, in connection with the promotion, advertisement and sale of defendants' goods.

35.     Defendants have willfully used the CEO BARBIE Trade Dress in a manner calculated to cause confusion in the sale, offering for sale, and advertising of their goods.  Accordingly, Mattel is entitled to recover all damages sustained as a result of defendants' unlawful conduct, including three times defendants' profits and Mattel's damages as well as the costs of the suit and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

THIRD CAUSE OF ACTION

(Dilution--15 U.S.C.§ 1125(c); Cal. Bus. & Prof. Code § 14330;
and the Common Law)

36.     Mattel repeats and re-alleges each and every allegation of Paragraphs 1 through 35, above, as though fully set forth at length.

37.     Mattel has used its CEO BARBIE Trade Dress for many years to identify its products.  That trade dress has become a valid symbol of Mattel and is, and at all relevant times has been, famous.

38.     Defendants' use of Mattel's CEO BARBIE Trade Dress has diluted, and will continue to dilute, the distinctive quality of Mattel's trade dress in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), Section 14330 of the California Business & Professions Code and the comparable laws of other jurisdictions.

39.     Defendants' acts have damaged and will continue to damage Mattel irreparably.  Mattel has no adequate remedy at law for such wrongs and injuries.  The damage to Mattel includes harm to its good will and reputation that money cannot compensate.  Mattel is, therefore, entitled to preliminary and permanent injunctions restraining defendants and their agents, servants and employees, and all persons acting thereunder, in concert therewith or on their behalf, from diluting Mattel's CEO

7540235.1

BARBIE Trade Dress, including (without limitation) in connection with the promotion, advertisement, and sale of defendants' products.

40.     Defendants' dilution has been willful, and Mattel is therefore entitled to an award of defendants' profits, its damages and costs and fees in this action, as well as an order requiring the destruction of all dilutive articles.

FOURTH CAUSE OF ACTION

(Statutory and Common Law Unfair Competition)

41.     Mattel incorporates herein by reference each and every allegation contained in Paragraphs 1 through 40, above, as though set forth at length.

42.     By reason of the foregoing, defendants have been, and are, engaged in "unlawful, unfair or fraudulent business practices" in violation of §§ 17200 et seq. of the California Business and Professional Code and acts of unfair competition in violation of common law.

43.     Defendants' acts complained of herein have damaged and will continue to damage Mattel irreparably.  Mattel has no adequate remedy at law for these wrongs and injuries.  The damage to Mattel includes harm to its good will and reputation in the marketplace that money cannot compensate.  Mattel is therefore entitled to, without limitation, (i) preliminary and permanent injunctions restraining defendants and their agents, servants and employees, and all persons acting thereunder, in concert with or on their behalf, from using Mattel's trade dress and marks, or any colorable imitation or variation thereof, including (without limitation) in connection with the promotion, advertisement and sale of defendants' products; (ii) an accounting of defendants' profits for all goods sold through the use of Mattel's trade dress and marks; (iii) the imposition of a constructive trust in favor of Mattel on all profits obtained from defendants' misappropriation of Mattel's trade dress and marks; and (iv) Mattel's actual damages. Further, because defendants' acts have been wanton, deliberate, malicious and willful, Mattel is entitled to an award of punitive damages in order to punish defendants and to deter such misconduct in the future.

## FIFTH CAUSE OF ACTION

### (Common Law Misappropriation)

44.     Mattel incorporates herein by reference each and every allegation contained in Paragraphs 1 through 43, above, as though set forth at length.

45.     Mattel has made a substantial investment of time, effort, and money in creating the good will associated with, and the public recognition of, the CEO BARBIE Trade Dress.   By utilizing the CEO BARBIE Trade Dress, defendants have appropriated Mattel's good will and reputation without any payment, consideration, or consent and are unjustly reaping the benefit of Mattel's distinctive trade dress and marks.

46.     Defendants' conduct has caused great and irreparable damage to Mattel, and defendants' continued misappropriation will cause Mattel further damage unless defendants are restrained and enjoined from any further use or imitation of the CEO BARBIE Trade Dress.

47.     Mattel is therefore entitled to, without limitation, (i) preliminary and permanent injunctions restraining defendants and their agents, servants and employees and all persons acting thereunder, in concert with or on their behalf, from using Mattel's trade dress and marks, or any colorable or confusingly similar imitation thereof, including (without limitation) in connection with the promotion, advertisement and sale of defendants' products; (ii) an accounting of defendants' profits for all goods sold through the use of Mattel's trade dress and marks; (iii) the imposition of a constructive trust in favor of Mattel on all profits obtained from defendants' misappropriation of Mattel's trade dress and marks; and (iv) Mattel's actual damages.  Further, because defendants' acts have been wanton, deliberate, malicious and willful, Mattel is entitled to an award of punitive damages in order to punish defendants and to deter such misconduct in the future.

7540235.1

COMPLAINT

## SIXTH CAUSE OF ACTION

### (Common Law Unjust Enrichment)

48.     Mattel incorporates herein by reference each and every allegation contained in Paragraphs 1 through 47, above, as though set forth at length.

49.     Defendants have used the CEO BARBIE Trade Dress, good will and other property rights belonging to Mattel for the purpose of enhancing the commercial value of their goods and commercial activities.

50.     As a direct and proximate result of defendants' unlawful and improper use of the CEO BARBIE Trade Dress, and the enormous good will associated therewith, defendants have been unjustly enriched, and Mattel has suffered, and will continue to suffer, loss of profits by virtue of defendants' conduct.  The exact amount of unjust profits realized by defendants and profits lost by Mattel are presently unknown to Mattel and cannot be readily ascertained without an accounting.

51.     Defendants' unlawful use of Mattel's CEO BARBIE Trade Dress, as well as the good will and other property rights belonging to Mattel, is causing and will continue to cause irreparable injury to Mattel's name, business reputation and good will unless defendants are preliminarily and permanently restrained from such further conduct.  Mattel is, therefore, entitled to, without limitation, (i) preliminary and permanent injunctions restraining defendants and their agents, servants and employees, and all persons acting thereunder, in concert with or on their behalf, from using Mattel's trade dress and marks, or any colorable or confusingly similar imitation thereof, including (without limitation) in connection with the promotion, advertisement and sale of defendants' products; (ii) an accounting of defendants' profits for all goods sold through the use of Mattel's trade dress and marks; (iii) the imposition of a constructive trust in favor of Mattel on all profits obtained from defendants' misappropriation of Mattel's trade dress and marks; and (iv) Mattel's actual damages.  Further, because defendants' acts have been wanton, deliberate, malicious and willful, Mattel is entitled

-13-

to an award of punitive damages in order to punish defendants and to deter such misconduct in the future.

SEVENTH CAUSE OF ACTION

(Common Law Passing Off)

52.     Mattel incorporates herein by reference each and every allegation contained in Paragraphs 1 through 51, above, as though set forth at length.

53.     The use of the CEO BARBIE Trade Dress by defendants is likely to cause mistake and to confuse and deceive the public.  Defendants' use of the CEO BARBIE Trade Dress constitutes a knowing and willful passing-off of defendants' goods for those of Mattel, or for those authorized by Mattel, and deceives customers throughout this judicial district and in the United States.

54.     Defendants' unlawful use of Mattel's CEO BARBIE Trade Dress, as well as the good will and other property rights belonging to Mattel, is causing and will continue to cause irreparable injury to Mattel's name, business reputation and good will unless defendants are preliminarily and permanently restrained and enjoined from such passing-off.  Mattel therefore is entitled to, without limitation, (i) preliminary and permanent injunctions restraining defendants and their agents, servants and employees, and all persons acting thereunder, in concert with or on their behalf, from using Mattel's trade dress and marks, or any colorable or confusingly similar imitations thereof, including (without limitation) in connection with the promotion, advertisement and sale of defendants' products; (ii) an accounting of defendants' profits for all goods sold through the use of Mattel's trade dress and marks; (iii) the imposition of a constructive trust in favor of Mattel on all profits obtained from defendants' misappropriation of Mattel's trade dress and marks; and (iv) Mattel's actual damages.  Further, because defendants' acts have been wanton, deliberate, malicious and willful, Mattel is entitled to an award of punitive damages in order to punish defendants and to deter such misconduct in the future.

EIGHTH CAUSE OF ACTION

(Breach of Contract)

55.     Mattel incorporates herein by reference each and every allegation contained in Paragraphs 1 through 54, above, as though set forth at length.

56.     In 2005, Mattel sued defendants in this Court for infringing, diluting and otherwise misappropriating Mattel's intellectual property, including without limitation Mattel's rights in the CEO BARBIE doll head.  To resolve that action, Mattel and defendants entered into the Agreement.  Mattel has performed all duties under the Agreement, which is and remains a valid and binding contract on defendants.  In the Agreement, defendants promised, inter alia, to refrain from further use or reproduction of Mattel's CEO BARBIE doll head and to otherwise refrain from further infringement, dilution and misappropriation of Mattel's intellectual property rights.  Furthermore, pursuant to the Agreement, this Court entered the Injunction, which prohibits defendants from infringement and dilution of Mattel's intellectual property rights, including specifically its rights in the CEO BARBIE doll head.

57.     Defendants' conduct has breached the Agreement and violated this Court's Injunction.  As a consequence, Mattel is entitled to damages, to specific performance of the Agreement and to the enforcement of the Injunction, as well as an award of attorneys' fees and all other legal and equitable remedies to which Mattel is entitled for defendants' breaches and violations.

PRAYER FOR RELIEF

Wherefore, Mattel hereby requests that this Court:

A.     Enter preliminary and permanent injunctions restraining defendants, their agents, servants and employees, and all persons in active concert or participation with them, from infringing or encouraging, aiding or abetting others to infringe Mattel's protected works;

B.     Enter preliminary and permanent injunctions restraining defendants, their agents, servants and employees, and all persons in active concert or participation with

them, from further imitating, copying, distributing, importing and displaying the works embodied in Mattel's protected works and from further preparing derivative works from the works embodied in Mattel's protected works;

B.   Enter preliminary and permanent injunctions requiring defendants, their agents, servants and employees, and all persons in active concert or participation with them, to immediately cease their unauthorized use, infringement and dilution of Mattel's trade dress and all colorable or confusingly similar imitations thereof.

C.   Enter preliminary and permanent injunctions requiring defendants, their agents, servants and employees, and all persons in active concert or participation with them, to immediately cease their unfair competition, passing off and misappropriation of Mattel's intellectual property, including without limitation Mattel's trade dress and all colorable or confusingly similar imitations thereof;

D.   Enter an order requiring defendants, and all persons in active concert or participation with defendants, to recall all products and materials that use, reproduce or display Mattel's copyrighted works or Mattel's trade dress, or any simulation, reproduction, counterfeit, copy, substantially or confusingly similar likeness or colorable imitation thereof;

E.   Enter an order, pursuant to 15 U.S.C. § 1118, directing defendants, and all persons in active concert or participation with defendants, to deliver for destruction all products and materials in their possession or under their control bearing any unauthorized copy of Mattel's copyrighted works or trade dress or any simulation, reproduction, counterfeit, copy, substantially or confusingly similar likeness, or colorable imitation thereof, and all molds, negatives, prints, copies, proofs, or other means of making the same;

F.   Enter an order, pursuant to 17 U.S.C. § 503(a) and other applicable law, impounding all of defendants' products and materials that infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles by which copies of the works embodied in Mattel's copyrights may be reproduced;

-16-

G.     Enter an order, pursuant to 17 U.S.C. § 503(b) and other applicable law, requiring the destruction of all copies of defendants' products and materials that infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles by means of which the works embodied in Mattel's copyrights may be reproduced;

H.     Award Mattel damages, costs, attorneys' and investigators' fees, and an accounting of defendants' profits attributable to defendants' unauthorized use of Mattel's copyrighted works and trade dress, pursuant to 17 U.S.C. §§ 503-505, 15 U.S.C. § 1117 and other applicable law;

I.     Award Mattel treble and enhanced damages, including without limitation pursuant to 15 U.S.C. § 1117;

J.     Award Mattel statutory damages, pursuant to 15 U.S.C. § 504, for defendants' willful infringement of Mattel's copyrights;

K.     Award Mattel punitive damages, as a result of defendants' wanton, deliberate, malicious and willful misconduct;

L.     Award Mattel its damages resulting from defendants' breach of contract, together with orders mandating specific performance of defendants' contractual obligations and enforcing this Court's injunctive order, as well as an award of attorneys' fees and all other legal and equitable remedies to which Mattel is entitled for defendants' breaches and violations; and

M.     Award such other and further relief as this Court deems just and proper.

COMPLAINT

7540235.1

1 | DATED:  December 31, 2015
2
3 | QUINN   EMANUEL   URQUHART   &
  | SULLIVAN, LLP
4
5
6 | By    /s/ Michael T. Zeller
7 | Michael T. Zeller
  | Attorneys for Plaintiff
8 | Mattel, Inc.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

JURY DEMAND

2   Mattel respectfully requests a jury trial on all issues triable thereby.

3

4 DATED:  December 31, 2015

5

           QUINN  EMANUEL  URQUHART  &

6           SULLIVAN, LLP

7

8

9          By   */s/ Michael T. Zeller*

10            Michael T. Zeller
             Attorneys for Plaintiff

11            Mattel, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7540235.1

COMPLAINT